### WILLIAM WARWICK v. WILLIAM C. HUTCHINSON.

1. A contract by an assignee to indemnify the assignor upon the assignment of a chose in action, will be construed to be prospective, and to relate to acts to be done under the assignment, unless there be language used expressive of an intent to give the indemnity a broader scope.

2. It is a fundamental principle applicable alike to breaches of contract of this description, and to torts, that in order to found a right of action there must be a wrongful act done and a loss resulting from that wrongful act. The wrongful act must be the act of the defendant, and the wrong done and the injury sustained must bear to each other the relation of cause and effect; and the damages, whether they arise from withholding a legal right or the breach of a legal duty must be a natural and proximate consequence of the act complained of.

3. There is a broad distinction between an act which gives occasion for damages arising from other causes, which were not in the contemplation of the parties when the contract was made, and an act proximately causing the injury, and it is only for the latter that an action will lie.

4. In an action against a mortgagee of chattels for selling the chattels mortgaged at private instead of public sale, the measure of damages would be the difference between the price realized and the actual value of the property, or the excess of the value of the property above the mortgage debt.

5. H., by his agent B., sold a horse to M., and took notes and a mortgage on the horse sold and another horse for the price. H. assigned the notes and the chattel mortgage to W. W. agreed "that he would take all risks and save H. harmless, and would not get him into any scrape." W. sold the horses mortgaged at private instead of public sale. Before the sale M. notified W. that the horse sold to him was not as represented, and offered to rescind the sale, which offer was declined. M. subsequently sued H. for false and fraudulent representations upon which the horse was sold to him, and recovered a judgment. H. paid the judgment, and sued W. on his contract of indemnity. It appeared that neither H. nor W., at the time of the transfer

of the notes and chattel mortgage, knew of the representations of B. on the sale of the horse. *Held*—

1. That the contract of W. to indemnify H. did not extend to the consequences of antecedent acts done by H. or his agent, B.

2. That W.'s refusal to give up the horses to M., on his demand, was not, under the circumstances, wrongful.

3. That although W.'s refusal to give up the horses to M. was the occasion of the loss H. sustained in being compelled to pay damages to M., it was not, in a legal sense, the cause of H.'s loss; that the loss he sustained in that respect was caused by the false and fraudulent representations under which the horse was sold, and for these W. did not undertake to become responsible.

On *certiorari* to Monmouth Pleas.

The facts certified in the return to this writ material to the merits of this controversy, are these: One Borden, an agent of Hutchinson, in July, 1880, sold a horse to one Magahan. He took for the purchase money two notes, amounting to $90, payable to the order of Hutchinson, and also a bill of sale in the nature of a chattel mortgage on the horse sold and another horse, to secure payment of the notes. The notes were delivered to Hutchinson by Borden, together with an assignment of the bill of sale. Hutchinson transferred the notes and assigned the bill of sale to Warwick by parol, for the consideration of $45. The notes being unpaid, Warwick sued out a writ of replevin in the name of Hutchinson against Magahan; and obtained possession of the horses, and subsequently, in July, 1880, sold them at private sale for $135. They were worth $240. Hutchinson did not receive the consideration for the transfer of the notes to Warwick at the time of the transfer. It was paid to him after the sale of the horses.

On the 23d of February, 1881, Magahan brought an action against Hutchinson in a justice's court and recovered a judgment for $150 damages and $7.13 costs. This suit was founded on averments that the sale of the horse by Magahan to Hutchinson was made upon false and fraudulent representations with respect to the qualities of the animal sold, and

Warwick v. Hutchinson.

the refusal of Hutchinson to rescind the sale, and the subsequent sale and conversion of both animals by Hutchinson to his own use. This judgment was sustained on appeal, and Hutchinson paid the judgment, amounting, with the costs of appeal, in the whole, to $167.41.

Hutchinson then brought this suit. It is founded on an alleged contract of indemnity made by Warwick on the transfer of the notes and the assignment of the bill of sale to him. The suit was tried before a justice of the peace, and again before the Court of Common Pleas on appeal. The Court of Common Pleas gave a judgment in favor of Hutchinson for $176.41 damages, being the amount paid by Hutchinson in satisfaction of the judgment Magahan recovered against him, and for loss of time, and various costs and expenses, together with costs of suit. The latter judgment is brought up by this writ of *certiorari*.

Argued at November Term, 1882, before Justices DEPUE, VAN SYCKEL and REED.

For the plaintiff in *certiorari*, *G. C. Beekman.*

*Contra, C. Robbins.*

The opinion of the court was delivered by

DEPUE, J. The Court of Common Pleas certify, as a finding of fact, that Warwick, in consideration that Hutchinson would assign and transfer the said notes and deliver the said bill of sale to him, and for $45, " undertook and promised the said Hutchinson verbally to the effect that he, the said Warwick, would take all risks and save said Hutchinson harmless, and would not get him (Hutchinson) into any scrape."

The breach assigned in the plaintiff's demand is that the defendant did not nor would save harmless the said plaintiff, followed by the averment that by reason of the means and measures taken by and for the defendant for the collection of the money secured by the said notes, and because of his, the

defendant, taking possession and selling and disposing of the animals in an unlawful manner, under and by color of the bill of sale, and of matters charged against the plaintiff in procuring the bill of sale and notes, the plaintiff was put to great trouble and inconvenience, and was forced to pay said Magahan the sum of $167.41 for damages and costs on account of the premises.

The Pleas certify that it appeared that Hutchinson told Warwick at the time of the transfer of the notes and bill of sale to him that "there might be trouble about the notes and bill of sale," and that it did not appear that either Hutchinson or Warwick at that time knew of the representations made by Borden concerning the animal at the time of his making the sale of it. The horses included in the bill of sale were in Magahan's possession when the notes and bill of sale were transferred to Warwick, and the replevin suit by which Warwick got possession of them was settled by the parties.

Of the reasons for reversal we will only consider those which relate to the question whether the plaintiff, on his own showing, has any cause of action.

A contract by an assignee to indemnify the assignor upon the assignment of a chose in action is an ordinary concomitant of an assignment. Such contracts are uniformly construed to be prospective, and to relate to acts done under the assignment, unless there be language used expressive of an intent to give the indemnity a broader scope. The defendant's agreement that he would take all risks and save the plaintiff harmless, and would not get him into a scrape, so far as it was an agreement of indemnity, was clearly prospective, and related to acts done under the assignment. The defendant took the risk of the failure of his title and of his inability to collect the money, and under his agreement would be liable for the costs of the replevin suit which he brought in the plaintiff's name to get possession of the property, and perhaps for selling the property at private instead of public sale. But his contract is incapable of a construction which would extend it and make it an indemnity for prior acts done by the plaintiff or his agent,

which were wholly disconnected from the assignment. The material questions, therefore, are whether the defendant did any act under the assignment in violation of his duty, and whether the damages adjudged were the legal product of any wrongful act on his part.

It is a fundamental principle of law, applicable alike to breaches of contract of this description and to torts, that in order to found a right of action there must be a wrongful act done and a loss resulting from that wrongful act; the wrongful act must be the act of the defendant, and the injury suffered by the plaintiff must be the natural and not merely a remote consequence of the defendant's act. The wrong done and the injury sustained must bear to each other the relation of cause and effect; and the damages, whether they arise from withholding a legal right or the breach of a legal duty, to be recoverable, must be the natural and proximate consequence of the act complained of. 2 *Greenl. Ev.*, §§ 254–256; *Sedg. Dam.* 31; *Stevenson* v. *Newnham*, 13 *C. B.* 285; *Burton* v. *Pinkerton, L. R.*, 2 *Exch.* 340; *Glover* v. *L. & S. W. R. R. Co., L. R.*, 3 *Q. B.* 25; *Byard* v. *Holmes*, 5 *Vroom* 296; *Cuff* v. *N. & N. Y. R. R. Co.*, 6 *Vroom* 17; *Kuhn* v. *Jewett*, 5 *Stew. Eq.* 647.

The acts of the defendant complained of were his refusal to give up the horses on demand by Magahan, and the steps taken by him to enforce the lien of the bill of sale. The case shows that, after the horses were obtained by the defendant under the writ of replevin, Magahan notified him that the horse sold was not as represented, and offered to rescind the sale, which offer was declined. But it did not appear that the defendant, when he took the assignment of the bill of sale, had any knowledge of the representations on which the sale to Magahan had been made. Under these circumstances the defendant was under no obligation to give up the horses. If he had given them up without the plaintiff's consent, he would still have been liable for the consideration of the assignment. Whatever the defendant did in prosecuting his writ of replevin and in selling the horses, were lawful acts, done in the enforce-

ment of the rights he acquired under the assignment of the bill of sale, except that, treating the bill of sale as a chattel mortgage, he sold the chattels mortgaged at private instead of public sale.

The action is not brought to recover damages for selling the property at private sale. In such an action, if it could be brought by any one else than the mortgagor—and it could not, unless under special circumstances—the measure of damages would be the difference between the price realized and the actual value of the property, or the excess of the value of the property above the mortgage debt. *Bird* v. *Davis*, 1 *Mc-Cart.* 467; *Jones on Chattel Mortgages*, §§ 707, 708. This suit, in the frame of the pleadings and the damages awarded, can be sustained only on the ground that the defendant is legally responsible for the damages recovered against the plaintiff by reason of the false representations on which the horse was originally sold to Magahan. In this aspect the plaintiff's suit is wholly without foundation. The indemnity he took of the defendant on the transfer of the notes and bill of sale did not extend to such damages, and they did not result proximately from any act the defendant did under the bill of sale. It is true that if the defendant had given up the horses to Magahan on his request, the latter might not have brought his suit against the plaintiff which resulted in the judgment against him. But a suit by Magahan with such a result was not within the contemplation of either of the parties when the assignment was made, and there is a broad distinction between an act which gives occasion for damages arising from other causes not within the contemplation of the parties when the contract was made, and an act proximately causing the injury, and it is only for the latter that an action will lie. *Denny* v. *N. Y. C. R. R. Co.*, 13 *Gray* 481; *Morrison* v. *Davis*, 20 *Penna. St.* 171; *Railroad Co.* v. *Reeves*, 10 *Wall.* 176; *Cuff* v. *N. & N. Y. R. R. Co.*, 6 *Vroom* 17, 30, 34. *Burton.*v. *Pinkerton, L. R.*, 2 *Exch.* 340, will illustrate. The plaintiff there made a contract to serve on board an English ship as one of its crew for a voyage from London to Rio Janeiro

and back to a final port of discharge.   At Rio the master en-
gaged in an illegal business, and the plaintiff left the ship.
While at Rio he was seized by the authorities and imprisoned
as a Peruvian deserter.   In an action for a breach of contract
the plaintiff was allowed to recover damages for the loss of the
wages he might have earned, but was denied damages for the
imprisonment.   Bramhall, B., in delivering the opinion of
the court, said :   " It is true that in one sense the defendant's
conduct *caused* the imprisonment ; but for that, no doubt, the
plaintiff would not have been imprisoned.   That, however, is
not enough.   *   *   *   According to the ordinary rule, dam-
age, to be recoverable by the plaintiff, must inevitably flow
from the tortious act of the defendant.   It must be caused by
him as the *causa causans*, and this imprisonment was not so
caused."   In the present case the loss sustained by the plain-
tiff in being mulcted in damages in the Magahan suit was
caused solely by the fraudulent representations, by means of
which the sale of the horse to Magahan was effected.   It was
not in any legal sense due to any act done by the defendant.

The judgment should be reversed.